**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **JANE DOE,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civ. No. MJM-25-861** |
| **v.** | * | |
| | * | |
| **JOHNS HOPKINS UNIVERSITY** | * | |
| **APPLIED PHYSICS LABORATORY,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

This matter is before the Court on defendant Johns Hopkins University Applied Physics Laboratory's ("Defendant" or "APL") Motion to Dismiss, ECF 11; plaintiff Jane Doe's ("Doe" or "Plaintiff") Motion to Proceed Pseudonymously, ECF 2; and Plaintiff's Motion for Leave to Amend Complaint, ECF 18. No hearing is necessary to resolve these motions. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth below, Plaintiff's Motion to Proceed Pseudonymously is granted, Defendant's Motion to Dismiss is granted, and Plaintiff's Motion for Leave to Amend is granted in part and denied in part.

## I.    PROCEDURAL BACKGROUND

Plaintiff Jane Doe initiated this lawsuit on March 14, 2025, asserting claims against her former employer, defendant Johns Hopkins University Applied Physics Laboratory, for violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and Title I of the Americans with Disabilities Act ("ADA"), as well as state common law claims she later voluntarily dismissed. *See* ECF 1 (Verified Complaint ("Compl.")); ECF 16 (Notice of Voluntary Dismissal). The next day,

1

Plaintiff filed a Motion to Seal Name and Proceed Pseudonymously, ECF 2, to which Defendant filed a response in opposition, ECF 10, and Plaintiff filed a reply in support, ECF 14.

On April 14, 2025, Defendant moved to dismiss the Verified Complaint. ECF 11. Plaintiff filed an opposition to Defendant's motion to dismiss, ECF 17, and a motion to amend her Complaint, ECF 18. Defendant filed a reply in support of its motion to dismiss, ECF 19, and a response in opposition to Plaintiff's motion to amend her Complaint. ECF 20.

## II.    FACTUAL BACKGROUND

Doe was an employee of APL from 2016 until January 2018. Compl. ¶¶ 4–5. During the COVID-19 pandemic, APL required their employees to get the initial dose of the COVID-19 vaccination by October 15, 2021. *Id.* ¶ 6. APL offered exemptions to the vaccination requirement, including for medical or religious reasons. *Id.* ¶ 7.

Doe discussed completing a religious exemption form with her supervisor, who told her, "Just make sure you are doing so ethically." *Id.* ¶ 8. Following her supervisor's comment, Doe called APL's Ethics Department to discuss filing an internal ethics complaint. *Id.* ¶ 9. The Ethics Department discouraged Doe from filing the complaint. *Id.*

On September 30, 2021, Doe submitted a Religious Accommodations Request. *Id.* ¶ 10. She "noted in her submission her unwillingness to share her private medical and religious information with a large group of people." *Id.* Doe was informed by the Accommodations Coordinator that APL was receiving a high number of exemption requests, so the office's processing timeline was delayed. *Id.* ¶ 12.

On December 28, 2021, Doe began to experience symptoms of COVID-19 and tested positive for the virus the next day. *Id.* ¶ 12. She shortly thereafter filed a short-term disability claim with Defendant. *Id.*

On January 4, 2022, the same day that Defendant acknowledged Doe's disability claim, Doe was notified via email that her religious accommodation request had been denied. *Id.* ¶ 15. Doe responded to the email, attempting to "clarify factual errors" and to demonstrate "her willingness to pay for her own COVID-19 testing [and] to wear a mask when needed onsite[.]" *Id.* ¶ 16–17. She also asked why she could not work remotely and requested saliva testing because it was less invasive than the nasal swab testing. *Id.* ¶ 17.

On January 6, 2022, Defendant told Doe that she "may not return to work until she was cleared by Defendant's Medical Office as a result of her COVID diagnosis" and attributed the denial of Doe's religious exemption request to "leadership expectation," even though Defendant told Doe that her position would be under a Flexible Work Arrangement. *Id.* ¶ 18. Defendant declined Doe's proposals to work remotely, wear a mask in the office, or any other accommodation. *Id.* ¶ 19.

On January 7, 2022, Doe filed an ethics complaint against Defendant "for their discriminatory treatment against her and the continuous pressure she faced to comply with the COVID-19 vaccination policy." *Id.* ¶ 20. The Accommodations Coordinator informed Doe that her religious exemption denial is final, and no other accommodation would be possible. *Id.* ¶ 21.

On January 10, 2022, Dr. Meegan Chestnut of Columbia Medical Practice sent a letter and medical exemption request to Defendant, informing them that "Doe should not receive a COVID-19 vaccination for at least three months after her COVID-19 diagnosis." *Id.* ¶ 22. "This document, and the others submitted by Dr. Chestnut, stood as Doe's medical exemption request." *Id.*

On January 11, 2022, Doe told the Accommodations Coordinator "her concerns of religious discrimination and sought clarification as to why her exemption request was denied, despite other similarly situated individuals having theirs accepted." *Id.* ¶ 23.

On January 18, 2022, at 10:00 AM, Doe's request for a medical exemption was denied. *Id.* ¶ 24. According to Doe, "[s]imilarly situated individuals employed by Defendant who were denied medical or religious exemptions were provided thorough consideration and formal documentation." *Id.* Defendant granted "multiple other religious and medical exemption accommodation requests of other religions and of Christianity from the COVID-19 vaccination mandate." *Id.* ¶ 26.

Later the same day, at 3:00 PM, Defendant fired Doe via Zoom. *Id.* ¶ 25. After Doe's termination, Defendant spoke with Doe's doctor without Doe's consent. *Id.* ¶ 27. On January 20, 2022, "Defendant sent internal email communications about Doe's medical information, again without Doe's consent[.]" *Id.* ¶ 28.

An employee of Defendant, Daniel Anna, sent an email to Doe's former coworkers with approved accommodations requests. *Id.* ¶ 29. The email detailed saliva testing for COVID-19 as part of their on-site accommodations. *Id.*

Defendant contacted Doe on multiple occasions about the ethics complaint that she filed. *Id.* ¶ 30. Doe notified Defendant's ethics investigator that Defendant's medical advisor had "spoken with Doe's primary care physician, Dr. Chestnut, without Doe's consent . . . ." *Id.* On February 28, 2022, Doe's ethics complaint was officially terminated. *Id.*

Doe filed an official complaint with the Equal Employment Opportunity Commission ("EEOC") on April 21, 2022, *id.*, and filed the instant lawsuit on March 14, 2025, *id.* ¶ 31.[1]

---

[1] Doe states that she filed a charge with the EEOC on April 21, 2022. *See* ECF 1 at 7. She does not state when she received a Right-to-Sue Letter, so it is unclear whether this matter was filed within the requisite 90-day period. *See* 42 U.S.C. § 2000e–5(f)(1) (complainant has 90 days to file suit in federal or state court after being notified of the right to sue).

### III.    PLAINTIFF'S MOTION TO PROCEED PSEUDONYMOUSLY

Plaintiff requests leave to proceed with this litigation under a pseudonym, with her actual identity maintained by the Court under seal. ECF 2 at 4. She contends that her top-secret security clearance prevents her from disclosing information about her and her colleagues' identities, roles, connections, and security clearances, and that such disclosure would pose "a real and present risk of retaliatory or other harm, from both foreign and domestic actors." ECF 14 at 1. Plaintiff also argues that her claims involve private medical information, there is a risk of "retaliatory harm" in her field of work, and Defendant will not be prejudiced if she were permitted to proceed pseudonymously. ECF 2 at 1–3. Defendant opposes the request, arguing that Plaintiff's justifications are insufficient to overcome the presumption of public access to judicial proceedings and records. *See generally* ECF 10. Plaintiff's motion is denied because her contentions here do not present exceptional circumstances sufficient to justify proceeding by pseudonym.

"To preserve the public's interest in judicial proceedings, the Federal Rules of Civil Procedure contain a presumption that an action should be prosecuted in the name of the real party in interest." *Doe v. Univ. of Md. Med. Sys. Corp.*, Civ. No. SAG-23-1572, 2023 WL 3949737, at *2 (D. Md. June 12, 2023) (citing Fed. R. Civ. P. 10(a), 17(a)). This presumption is rooted in the common law and the First Amendment. *See Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 424, 428 (4th Cir. 2005). The public presumptive right of access to a party's name may be overcome by "exceptional circumstances," such as when the party presents "compelling concerns relating to personal privacy or confidentiality . . . ." *Doe v. Public Citizen*, 749 F.3d 246, 273 (4th Cir. 2014).

The Fourth Circuit has explained that district courts "ha[ve] an independent obligation to ensure that extraordinary circumstances support such a request by balancing the party's stated

5

interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party." *Id.* at 274. To achieve this balance, courts in this Circuit consider the following list of non-exhaustive factors:

> (1) [w]hether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; (3) the ages of the persons whose privacy interests are sought to be protected; (4) whether the action is against a governmental or private party; and, relatedly, (5) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993) (enumeration added). It is a "rare dispensation" that a court finds it appropriate for a plaintiff to proceed by pseudonym. *Public Citizen*, 749 F.3d at 273 (quoting *James*, 6 F.3d at 238). *See also James*, 6 F.3d at 238 ("The decision whether to permit parties to proceed anonymously at trial is … committed in the first instance to trial court discretion.").

The first *James* factor, which considers whether the litigation is of a "sensitive and highly personal nature," 6 F.3d at 238, weighs in favor of disclosure. Courts generally consider medical conditions to meet this sensitivity threshold when coupled with extremely stigmatizing factors, such as sexual assault allegations or mental health issues. *See Doe v. Chesapeake Med. Sols., LLC*, Civ. No. SAG-19-2670, 2020 WL 13612472, at *1 (D. Md. Feb. 26, 2020) (finding that because the case "uniquely implicate[d]" both plaintiff's medical conditions and allegations of sexual exploitation due to those medical conditions, proceeding pseudonymously was warranted); *Univ. of Md. Med. Sys. Corp.*, 2023 WL 3949737, at *3 (noting that plaintiff's medical conditions and mental health both being at the center of the allegations weighed in favor of anonymity).

6

Here, Plaintiff asserts a concern that "private, medically protected information" will become available to the public. ECF No. 2, ¶ 10. But the only medical information implicated in this case is Plaintiff's COVID-19 diagnosis and her request for a medical exemption from the COVID-19 vaccine. As Defendant notes, more than forty million people have contracted COVID-19 since the pandemic started six years ago. *See* ECF 10 at 5. In a world where COVID-19 has become commonplace, this diagnosis and related exemption request fall far short of the stigmatizing or unusual medical circumstances courts typically require to justify proceeding under a pseudonym.

Plaintiff's argument that her security clearance justifies proceeding under a pseudonym is also insufficient. In support, Plaintiff attests that her clearance prevents her from discussing, among other things, the "specific details of work, or particularly sensitive data relating thereto;" "names of projects or missions [] worked on;" "specific locations associated with [the] clearance;" and "conduct that, if known, creates vulnerability to exploitation, manipulation or duress by a foreign intelligence entity or other individual or group[.]" ECF 14 at 2. Plaintiff fails, however, to connect any of the foregoing to this litigation, nor does she offer sufficient details that would allow this Court to conclude that denying her motion would expose her and colleagues to harm from "from both foreign and domestic actors." ECF 14 at 1. While the Court acknowledges Plaintiff's security clearance, the only information she seeks to shield at this time is her name, and "cases challenging revocations of, denials of, or investigations regarding security clearances are frequently litigated under the plaintiffs' real names." *Doe v. Benoit*, No. 119CV01253, 2019 WL 13079193, at *4 (D.D.C. Apr. 30, 2019) (citing cases). If any sensitive or confidential information turns up in the course of discovery or motions practice, it can be protected from disclosure by an appropriate protective order and/or sealing order. *See* Fed. R. Civ. P. 26(c); Loc. R. 105.11.

The second *James* factor calls for considering whether any harm would result from publicly identifying the party. *See* 6 F.3d at 238. Courts "consistently have rejected anonymity requests to prevent speculative and unsubstantiated claims of harm." *Public Citizen*, 749 F.3d at 274. *See also Doe v. Corp. Sec. Sols., Inc.*, 751 F. Supp. 3d 609, 614 (E.D.N.C. 2024) (citing cases) ("[N]aked speculation of future harm does not justify pseudonymous litigation."). Pseudonymity is generally warranted where there is a concrete risk of physical or severe mental harm, rather than potential economic or professional consequences. *Compare Univ. of Md. Med. Sys. Corp.*, 2023 WL 3949737, at *3 (finding pseudonymity appropriate where disclosure risked exacerbating mental health stigma and harm), *and Doe v. Austin*, No. 22-3474, 2024 WL 864197, at *3 (D.D.C. Feb. 29, 2024) (permitting pseudonymity where the plaintiff's role as a U.S. intelligence officer could reasonably expose to "the attention of hostile foreign actors" and could expose her family to "immediate danger of retaliation, capture, ransom, abduction, or death"), *with S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979) (rejecting argument that plaintiff lawyers' identities "[would] leave them vulnerable to retaliation from their current employers, prospective future employers and an organized bar that does 'not like lawyers who sue lawyers[]" because plaintiffs "face[d] no greater threat of retaliation than the typical plaintiff alleging Title VII violations[]"); *Candidate No. 452207 v. CFA Inst.*, 42 F. Supp. 3d 804, 809 (E.D. Va. 2012) (finding professional and reputational risks to plaintiff insufficient to justify pseudonymity); *Free Market Compensation v. Commodity Exchange, Inc.*, 98 F.R.D. 311, 313 (S.D.N.Y. 1983) (finding plaintiff's wishes to proceed under a pseudonym due to fear of both professional embarrassment and economic loss "insufficient" to justify doing so). Plaintiff's speculative concern about professional fallout and personal distress does not rise to the level of a reasonably expected claim of harm. This factor, too, weighs against her motion.

The third *James* factor considers the plaintiff's age. In practice, courts generally deem this factor relevant in cases implicating a minor's privacy interests. *See, e.g.*, *Smith v. Towson Univ.*, Civ. No. 22-2998, 2022 WL 18142844, at *2 (D. Md. Nov. 30, 2022). Here, Plaintiff is not a minor.

The next factor asks whether the action is against a governmental or private party. "Courts are more likely to grant a plaintiff permission to anonymously bring suit against a governmental entity than a private entity because 'an action against a private party can result in damage to the defendant's reputation as well as economic harm' in ways that do not raise similar concerns in civil actions against the government." *Candidate No. 452207*, 42 F. Supp. 3d at 810 (citation omitted). *See also Smith*, 2022 WL 18142844, at *2 (quoting *Doe v. Alger*, 317 F.R.D. 37, 41 (W.D. Va. 2016)) ("Unlike actions against private parties, '[a]ctions against the government do no harm to its reputation[.]'"). Thus, when a private party is sued and publicly accused of wrongdoing, basic fairness may—but does not always—call for disclosure of the accusers' identities, depending on the circumstances. *See S. Methodist Univ. Ass'n of Women L. Students*, 599 F.2d at 713 ("Basic fairness dictates that those among the defendants' accusers who wish to participate in this suit as individual party plaintiffs must do so under their real names."); *Int'l Refugee Assistance Project v. Trump*, Civ. No. TDC-17-0361, 2017 WL 818255, at *3 (D. Md. Mar. 1, 2017) ("[T]he mere filing of a lawsuit against a private party may cause the defendant reputational and economic harm, such that fairness requires the identification of the plaintiffs[.]"); *but see Doe v. Sidar*, 93 F.4th 241, 248 (4th Cir. 2024) (reaffirming *James*'s requirement of a "particularized assessment of the equities"). Furthermore, "[u]se of pseudonyms is more likely to be appropriate in cases challenging government activity because there is both 'arguably a public interest in a vindication of . . . rights' and a risk of stigmatization of the plaintiff, who often represents a minority interest. *Int'l Refugee*

9

*Assistance Project*, 2017 WL 818255, at *3 (quoting *EW v. New York Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003)).

Here, Plaintiff details APL's origins and argues that APL "perform[s] governmental functions as a University Affiliated Research Center . . . ." ECF 14 at 6. But APL is a private institution, and it can suffer reputational harm—and, as a result, economic harm—in ways that a federal, state, or local government cannot.[2] Moreover, Plaintiff is not challenging APL's performance of any government function or activity, and APL has engaged in similar litigation with a named plaintiff before this Court. *See Scherck v. The Johns Hopkins University Applied Physics Laboratory, LLC*, No. 23-1605, 2023 WL 6311469 (D. Md. Sept. 28, 2023). The fourth *James* factor weighs against Plaintiff's motion.

Relatedly, the final *James* factor directs this Court to consider whether there is a "risk of unfairness to the opposing party from allowing an action against it to proceed anonymously." 6 F.3d at 238. As noted above, a civil action against a private institution like APL can expose it to risk of reputational and economic harms. *See, e.g.*, *S. Methodist Univ. Ass'n of Women L. Students*, 599 F.2d at 713; *Candidate No. 452207*, 42 F. Supp. 3d at 810. Here, there would be some risk of unfairness in permitting Plaintiff to proceed by pseudonym with her allegations that APL engaged in various forms of discriminatory and retaliatory conduct while leaving APL exposed to potential reputational and economic damage that those allegations may cause.

---

[2] The Court notes some support for the proposition that the third *James* factor should weigh against plaintiff anonymity even in suits brought against actual governmental entities, like *public* universities, that, due to their commercial activity, can suffer reputational and economic harms in ways similar to private entities. *See Doe v. N. Carolina Cent. Univ.*, No. 1:98CV01095, 1999 WL 1939248, at *4 (M.D.N.C. Apr. 15, 1999) (finding where "[p]laintiff has made serious allegations against NCCU and [supervisor] that do impinge upon their reputations[,] . . . the fact that NCCU is a state university is insufficient to justify allowing Plaintiff to proceed anonymously"); *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) ("[T]he fact that Doe is suing the Postal Service does not weigh in favor of granting Doe's request for anonymity.").

But this sort of asymmetry in anonymity is not the only consideration called for by *James*'s risk-of-unfairness factor. *See Doe v. Mast*, 745 F. Supp. 3d 399, 413 (W.D. Va. 2024) (quoting *Sidar*, 93 F.4th at 248) ("[T]he Fourth Circuit has admonished courts that the fairness factor does not 'always counsel[] against letting a plaintiff in a civil action use a pseudonym at trial unless the defendant is also using one.'"). A court should also consider whether allowing the plaintiff to proceed anonymously would "hinder[] the [defendant's] ability to mount a defense—as it might in a case in which the defendant[] do[es] not know the plaintiff['s] identit[y]." *Id.* (citing cases). *See also Smith*, 2022 WL 18142844, at *3 (finding no unfairness to defendant where plaintiff has filed his true name under seal and "defendant is fully aware of [p]laintiff's identity[]"); *Corp. Sec. Sols.*, 751 F. Supp. 3d at 615 (finding, on consideration of the fifth *James* factor, that "permitting Doe to proceed pseudonymously would not hinder [defendant's] ability to fully and fairly litigate this case"). The parties dispute whether APL is prejudiced by Plaintiff's anonymity. Here, Plaintiff contends that Defendant "already knows [her] identity[,]" ECF 14 at 2, but according to Defendant, "Plaintiff has not disclosed her true identity, under seal or otherwise[,]" ECF 10 at 8. Defendant is correct that Plaintiff has not yet filed her true name under seal, but she requests leave to do just that, *see* ECF 2, and the Court presumes that APL, as Plaintiff's former employer, can determine Plaintiff's identity based on the allegations in her Complaint, *see* ECF 1. Therefore, the Court does not find that APL will be prejudiced in its ability to defend against Plaintiff's claims if Plaintiff were allowed to proceed pseudonymously.

Because the relevant risk-of-unfairness considerations in this case cut both ways,  the Court finds the fifth *James* factor to be neutral.

In sum, the majority of the *James* factors weigh against allowing Plaintiff to proceed in this litigation by pseudonym. She has not presented such extraordinary circumstances to override

11

the strong presumption of public access to judicial proceedings and the identities of the parties thereto. Accordingly, Plaintiff's motion is denied.

## IV.   DEFENDANT'S MOTION TO DISMISS

APL moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss Doe's Complaint for failure to state a plausible claim for relief. For the reasons explained below, the motion is granted, and Doe's initial Complaint is dismissed.

### A.  Standard of Review

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may seek dismissal for "failure to state a claim upon which relief can be granted[.]" To survive the challenge, the non-moving party must have pleaded facts demonstrating "a claim to relief that is plausible on its face." *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that a defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *U.S. ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *U.S. ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 212

(4th Cir. 2019)). The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

### B. Count I: Religious Discrimination

Count I asserts a claim of discrimination on the basis of religion under Title VII. Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . . ." 42 U.S.C. § 2000e-2(a). At trial in an employment discrimination case, the plaintiff bears the burden of proving her claims either through "direct or indirect" evidence of discriminatory animus under "ordinary principles of proof[,]"[3] *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1116 (1997), or follow the burden-shifting framework articulated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973). *See Smith v. CSRA*, 12 F.4th 396, 416 (4th Cir. 2021). Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case of discrimination. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318–20 (4th Cir. 2005). The precise formulation of the required *prima facie* showing will vary in "differing factual situations." *McDonnell Douglas*, 411 U.S. at 802 n.13. If a plaintiff establishes a *prima facie* case, a presumption of illegal discrimination arises, and the burden of production shifts to the employer to state a legitimate, non-discriminatory reason for its adverse action. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011).

---

[3] "Direct evidence is 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" *Bandy v. City of Salem*, 59 F. 4th 705, 711 (4th Cir. 2023) (quoting *Taylor v. Va. Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (en banc), *abrogated on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003)).

Notably, the "*prima facie* case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002). A plaintiff is not strictly required to allege facts sufficient to establish all elements of a *prima facie* case of employment discrimination to avoid dismissal under Rule (12)(b)(6). *Parker v. Child.'s Nat'l Med. Ctr., Inc.*, Civ. No. ELH-20-3523, 2021 WL 5840949, at *9 (D. Md. Dec. 9, 2021). She must, however, "allege[ ] facts that plausibly state a violation of Title VII 'above a speculative level,'" *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020) (quoting *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012)). Put differently, the plaintiff generally must allege facts to support a reasonable inference that the employer took adverse action against the plaintiff "under circumstances which give rise to an inference of unlawful discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *see also Coleman*, 626 F.3d at 190; *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015).

Courts have recognized two theories of liability for religious discrimination in employment: (1) disparate treatment; and (2) failure to accommodate. *Menk v. MITRE Corp.*, 713 F. Supp. 3d 113, 144–45 (D. Md. 2024) (citing *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1017 (4th Cir. 1996)). Plaintiff argues that her Complaint states a claim under either theory. *See* ECF 17 at 7. Defendant disagrees. For reasons explained below, the Court finds that Plaintiff fails to state a plausible discrimination claim under either theory.

### 1. Disparate Treatment

Plaintiff's disparate treatment theory fails for insufficient pleading because she fails to set forth circumstances to support any reasonable inference that she was fired based on her religion.

"Disparate treatment occurs when an employer treats certain people less favorably than others on the basis of a protected classification[,]" *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 207

14

(4th Cir. 2019) (quoting *Carter v. Ball*, 33 F.3d 450, 456 n.7 (4th Cir. 1994)), like religion. To establish a *prima facie* case of disparate treatment in employment, a plaintiff must show: "(1) membership in a protected class; (2) satisfactory work performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Id.* (citing *Coleman*, 626 F.3d at 190). As noted *supra*, "[a]t the motion to dismiss stage, a plaintiff need not establish a prima facie case of discrimination[,]" *Parker*, 2021 WL 5840949, at *9, but the facts alleged in the complaint must support a reasonable inference that the employer took an adverse action motivated by unlawful discrimination, *see Coleman*, 626 F.3d at 190; *McCleary-Evans*, 780 F.3d at 585.

In its motion, Defendant argues that Plaintiff fails to state a disparate treatment claim because she fails to allege that she was treated differently based on her religious beliefs. *See* ECF 11-1 at 14. Defendant contends that, in fact, "Plaintiff admits the opposite: that members of all faiths were granted religious accommodations associated with the Policy." *Id.* Further, Defendant argues, Plaintiff fails to allege that she met APL's "legitimate expectations." *Id.* at 15–16.

Plaintiff argues that Defendant's argument is "contradictory and self-defeating" because Plaintiff is "a Catholic woman of deep faith," which was known to Defendant, and "was fired, while others similarly situated were treated differently. That is a prima facie pleading of disparate treatment by Plaintiff." ECF 17 at 10.

Plaintiff's argument is *ipse dixit*. Plaintiff does not allege any direct evidence that she was fired "because of" her religion; nor does she allege facts to support a reasonable inference that she was fired "because of" her religion. 42 U.S.C. § 2000e-2(a). The Complaint offers no facts to suggest that any decisionmaker within APL had a discriminatory animus toward Plaintiff's religion and no "circumstances which give rise to an inference of unlawful discrimination." *Burdine*, 450

U.S. at 253. The facts alleged in the Complaint do not support an inference that, in firing Plaintiff, Defendant targeted her based on her religious beliefs or treated her differently than other similarly situated employees of other religious faiths. Plaintiff alleges that APL was aware of her "strongly held religious beliefs," Compl. ¶ 36, and granted employees of other religious backgrounds, including Christianity, accommodations while denying her request, *id.* ¶ 26. But the Complaint leaves unclear whether the employees of other religious backgrounds who received accommodations were similarly situated to Plaintiff such that one can reasonably infer without speculating that denying Plaintiff's such an accommodation was "because of" her religion. The denial of religious accommodation, by itself, is not sufficient to allege Title VII discrimination based on disparate treatment. Therefore, Plaintiff's disparate treatment claim fails.

### 2. Failure to Accommodate

Plaintiff also asserts her religious discrimination claim based on a failure-to-accommodate theory. But her initial Complaint does not include enough facts to permit an assessment of what Plaintiff's religious beliefs are and how they conflict with APL's policy. Thus, her failure-to-accommodate theory fails.

To state a *prima facie* claim for failure to accumulate religious beliefs, an employee must allege that "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *E.E.O.C. v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008) (citing *Chalmers*, 101 F.3d at 1019 (internal quotation marks omitted)).[4]

---

[4] If a *prima facie* case is made, the burden shifts to the employer to show "either (1) that it provided the plaintiff with a reasonable accommodation for his or her religious observances or (2) that such

While Plaintiff's Complaint generally asserts that she had bona fide religious beliefs that conflicted with APL's COVID-19 vaccine mandate, "it alleges no facts to allow this Court to assess what Plaintiff's religious beliefs are and how they conflict." *Friend v. AstraZeneca Pharms. LP*, Civ. No. SAG-22-03308, 2023 WL 3390820, at \*3 (D. Md. May 11, 2023). *See also Menk*, 713 F. Supp. 3d at 149 (quoting *Ellison v. Inova Health Care Servs.*, 692 F. Supp. 3d 548, 559 (E.D. Va. 2023)) ("[T]o withstand a motion to dismiss, Plaintiffs are obliged to set forth 'sufficient allegations regarding their subjective personal beliefs, how those beliefs are related to their faith, and how those beliefs form the basis of their objection to the COVID-19 vaccination.'").[5] In her opposition brief, Plaintiff argues, without citation to any fact in her Complaint, that her objection to receiving the vaccine "was predicated on her belief in Jesus Christ, understanding of The Holy Bible, and the sanctity of her body as God's Temple." ECF 17 at 8 (no citation); *see also id.* at 9 (noting, without citation, her objection to "injecting vaccines derived from or tested with aborted fetal cells and other foreign substances into her body, which is the Temple of the Holy Spirit"). But a plaintiff's statements in opposition to a motion to dismiss cannot cure deficiencies in her pleading. *See Mylan Lab'ys, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (citation omitted) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); *Noshafagh v. Leggett*, Civ. No. DKC 11-3038, 2013 WL 93345, at \*6 (D.

---

accommodation was not provided because it would have caused undue hardship[.]" *Firestone Fibers & Textiles*, 515 F.3d at 312.

[5] Plaintiff argues in a footnote that this proposition is an error this Court should correct. ECF 17 at 9 n.3. I disagree. It is well established that a plaintiff must allege sufficient facts to "'state[] a plausible claim for relief' that 'permit[s] the court to infer more than the mere possibility of misconduct'" and "to raise a right to relief above the speculative level . . . ." *Coleman*, 626 F.3d at 190 (quoting *Iqbal*, 556 U.S. 662, and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And the pleading standard of Federal Rule of Civil Procedure 8(a) is prescribed to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Without allegations of what religious beliefs a plaintiff held that conflicted with the employer's policy or requirements, the plaintiff's claim for accommodation would be entirely speculative and would not provide adequate notice of the factual grounds for her failure-to-accommodate claim.

Md. Jan. 7, 2013), *aff'd*, 538 F. App'x 251 (4th Cir. 2013) (citing *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 455 F. Supp. 2d 399, 436 (D. Md. 2006)). To be certain, courts in this Circuit must "give great weight" to a plaintiff's assertion that their objection to an employer policy is based on their religious faith. *Finn v. Humane Soc'y of the United States*, 160 F.4th 92, 98 (4th Cir. 2025) (citing *Barnett v. Inova Health Care Servs.*, 125 F.4th 465, 471 (4th Cir. 2025)). And plaintiff is not required to explain "how any particular tenet or principle of her religion prohibited vaccination." *Id.* at 99 (quoting *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1012 (7th Cir. 2024)). But the law requires that a plaintiff's "refusal to be vaccinated derives from an aspect of her religious practices or beliefs." *Id.* Simply stating that one has a religion that prevents vaccine compliance does not suffice to state a religious discrimination claim. The plaintiff "must plausibly connect her refusal to receive the COVID-19 vaccine to her religious *beliefs*[,]" *Id.* (emphasis added) (internal quotations omitted and cleaned up), and she must do so in her Complaint.

In sum, the initial Complaint fails to state a plausible Title VII religious discrimination claim. Accordingly, Count I is dismissed.

### C. Count II: Hostile Work Environment

Count II asserts a claim of hostile work environment in violation of Title VII. Plaintiff alleges that APL created a hostile work environment by its insistence that she comply with its COVID-19 vaccine policy and denial of her accommodation request. Her claim fails.

"A hostile [work] environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc) (cleaned up). A claim of religion-based hostile work environment under Title VII requires a plaintiff to show: "(1)

unwelcome conduct; (2) based on the plaintiff's [religion]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Id.* (citing *Okoli v. City of Baltimore*, 684 F.3d 216, 220 (4th Cir. 2011)); *see also Evans v. Int'l Paper Co.*, 936 F.3d 183, 192 (4th Cir. 2019).

In its motion, Defendant argues that Plaintiff's Complaint is flawed because it does not allege that Defendant's conduct was objectively hostile or interfered with Plaintiff's work performance, provides no support for the allegation that Plaintiff endured a "persistent threat" of termination, and does not connect any purported hostile treatment to her religious beliefs. *See* ECF 11-1 at 17–18.

Plaintiff argues that "persistent and specific communication from Defendant to get the COVID-19 vaccination, knowing that getting the COVID-19 vaccination was against her religious belief[,]" constituted unwelcome harassment and created an abusive atmosphere. ECF 17 at 10. Additionally, Plaintiff argues that a reasonable employee similarly situated to Plaintiff would believe they were subjected to a hostile work environment because this case is comparable to "eras when religious discrimination and 'cleansing' has raised its evil, ugly head in other nations and even our own[.]" *Id.* at 12.

Plaintiff's Complaint fails to state a claim for a hostile work environment. It includes allegations that Plaintiff and her employer communicated back-and-forth regarding APL's vaccine requirement and Plaintiff's accommodation request. Although establishing unwelcome conduct "is not a high hurdle," *Strothers v. City of Laurel*, 895 F.3d 317, 328 (4th Cir. 2018), the law requires employers and employes to engage in an interactive process when an accommodation is requested. The Fourth Circuit and other courts have emphasized "the importance of 'bilateral cooperation'

between an employer and employee in their search for a reasonable accommodation." *Firestone Fibers & Textiles Co.*, 515 F.3d at 316 (quoting *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986)); *see also Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1155 (10th Cir. 2000) (holding that the "statutory and regulatory framework" requiring reasonable accommodations for employee's religious practices obligates employer and employee to engage in an "interactive process" in seeking reasonable accommodations). Without more an employer's participation in this required interactive process is not actionable harassment. And Plaintiff does not allege that APL's contacts with Plaintiff were so "severe or pervasive to alter" her work conditions or "to create an abusive work environment[.]" *Boyer-Liberto*, 786 F.3d at 277.

Plaintiff's reliance on *Tawwaab v. Virginia Linen Serv., Inc.*, 729 F. Supp. 2d 757 (D. Md. 2010), is misplaced. The plaintiff in *Tawwaab* alleged that he was subjected to at least ten incidents of harassment that included racial slurs, insults, and threats. *See* 729 F. Supp. 2d at 766, 777–79. Defendant here is correct that it is "unfathomable that any reasonable individual would find that ordinary communications regarding Plaintiff's accommodation request would rise to the level of a racist slur or comment like those in *Tawwaab*." ECF 19 at 8.

Moreover, as explained in Part IV.B *supra*, the Complaint does not include any facts to support an inference that any alleged unwelcome conduct Plaintiff endured was based on her membership in a protected class, *i.e.*, her religion. Plaintiff's dissatisfaction with APL's denial of her accommodation request alone does not rise to the level of a religiously hostile work environment.

For all of the foregoing reasons, Count II must be dismissed.

### D. Count III: Retaliation

Count III asserts a claim of Title VII retaliation. Title VII forbids employers from retaliating against an employee for reporting workplace discrimination. *See Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015); 42 U.S.C. § 2000e–3(a). To state a *prima facie* claim of retaliation, a plaintiff must establish "(1) that she engaged in a protected activity, (2) that her employer took an adverse action against her, and (3) that there was a causal link between the two events." *Laurent-Workman v. Wormuth*, 54 F. 4th 201, 212 (4th Cir. 2022) (citation omitted). Plaintiff's retaliation clam falters at the third element.

Plaintiff argues that APL took the adverse action of terminating her employment not for noncompliance with APL's vaccination policy but instead because she submitted an accommodation request associated with the policy, which, she contends, was a protected activity. ECF 17 at 12.  An employee engages in Title VII protected activity when she "oppose[s] an unlawful employment practice or participate[s] in a charge or other proceeding under Title VII." *Balazs v. Liebenthal*, 32 F.3d 151, 158 (4th Cir. 1994); *see also* 42 U.S.C. § 2000e–3(a). Protected activity under the opposition clause of Title VII's anti-retaliation provision includes "complaints of discrimination based upon 'race, color, religion, sex or national origin.'" *Landino v. Sapp*, 520 F. App'x 195, 198 (4th Cir. 2013) (quoting *Balazs*, 32 F.3d at 159). While the Fourth Circuit has endorsed an "expansive view of what constitutes oppositional conduct[,]" *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015), "[g]eneral complaints of unfair treatment are not protected activity[,]" *Bowman v. Baltimore City Bd. of Sch. Commissioners*, 173 F. Supp. 3d 242, 248 (D. Md. 2016). Protected activity by an employee under § 2000e–3(a)'s opposition clause must oppose either employment actions that are "actually unlawful under Title VII" or those that

the employee "reasonably believes to be unlawful." *Boyer-Liberto*, 786 F.3d at 282 (citation omitted).

The Complaint does not contain any facts to suggest that Plaintiff's initial request for religious accommodation on September 30, 2021, was a Title VII protected activity. According to the Complaint, APL communicated its "'mandatory' COVID-19 vaccination requirement" to its employees on September 14, 2021, which required each employee "to receive an initial dose of the COVID-19 vaccine by October 15, 2021." Compl. ¶ 6. There is no indication in the Complaint that Plaintiff's September 30 accommodation request voiced objection or opposition to APL's vaccination requirement as a discriminatory employment practice. Plaintiff simply sought compliance with the policy by undertaking the prescribed process for seeking an exemption before the prescribed vaccination deadline. "[M]erely requesting a religious accommodation is not the same as opposing the allegedly unlawful denial of a religious accommodation." *Menk*, 713 F. Supp. 3d at 153 (quoting *Equal Emp. Opportunity Comm'n v. N. Mem'l Health Care*, 908 F.3d 1098, 1102–03 (8th Cir. 2018)). Plaintiff had a number of communications with APL about her accommodation request in October and November 2022. Compl. ¶¶ 11, 12. But the Complaint does not allege that Plaintiff opposed or complained about the vaccination policy at any point during these contacts. APL communicated its denial of Plaintiff's accommodation request on January 4, 2022. *Id.* ¶ 15.

It was not until Plaintiff "officially filed an ethics complaint against Defendant for their discriminatory treatment against her" several days after the email denying the religious accommodation that the Complaint provides any indication of a protected activity by Plaintiff. *Id.* ¶ 20. By that point, however, the parties had already contemplated Plaintiff's termination for failure to comply with the vaccination requirement. The Complaint alleges that on January 7, 2022,

Plaintiff "followed up" to request "any accommodation that would allow her to retain her employment with Defendant without receiving the COVID-19 vaccination." *Id.* Without facts to suggest that APL terminated Plaintiff on January 18, 2022, because her ethics complaint alleged discriminatory treatment, a causal connection between APL's adverse action and Plaintiff's activity is not plausible. Any such causal link is called into doubt by the fact that the the parties contemplated Plaintiff's termination before she even submitted her discrimination complaint,[6] and the only apparent reason for termination at that time was Plaintiff's non-compliance with APL's vaccine policy.

Courts have had no trouble dismissing employment retaliation claims, where a plaintiff is terminated for noncompliance with an employer's COVID-19 vaccination policy, and the policy was announced *prior to* the alleged protected activity. *See, e.g.*, *Schneider v. Cnty. of Fairfax*, No. 22-871, 2023 WL 2333305 (E.D. Va. Mar. 2, 2023), *aff'd*, No. 23-1303, 2023 WL 5524752 (4th Cir. Aug. 28, 2023) ("Because the COVID-19 policy was in place before any conduct plaintiff alleges to be protected activity occurred and because the policy clearly stated that dismissal could be a consequence for non-compliance, it is implausible to suggest that [plaintiff's] termination was a result of any of his protected activity rather than a result of his decision not to comply with the policy."); *Jorgenson v. Conduent Transp. Sols., Inc.*, Civ. No. SAG-22-01648, 2023 WL 1472022, at *6 (D. Md. Feb. 2, 2023), *aff'd*, No. 23-1198, 2023 WL 4105705 (4th Cir. June 21, 2023) ("Even if he had been able to demonstrate a good faith belief [his conduct was protected], though, Plaintiff cannot establish a retaliation claim because the mandatory attestation policy was put in place before he expressed opposition or refused to comply with it."); *Speaks v. Health Sys. Mgmt., Inc.*,

---

[6] Further, in her opposition brief, Plaintiff claims that APL "attempt[ed] to terminate Plaintiff while on short-term disability," before Plaintiff made an ethics complaint alleging discrimination for the first time. ECF 17 at 13.

No. 522CV00077KDBDCK, 2022 WL 3448649, at *6 (W.D.N.C. Aug. 17, 2022) (finding "it is not reasonable to infer that there was a causal connection between [plaintiff's] criticism of [defendant's COVID-19 vaccination] policy and her termination" where plaintiff was terminated under the policy and it "enacted *before* [plaintiff] spoke up in opposition to the vaccination requirement").[7] Likewise, here, APL enacted a policy that made vaccination for COVID-19 "mandatory" for all employees months before Plaintiff ever complained of discrimination and months before she was terminated. These facts do not support a reasonable inference of any causal link between Plaintiff's protected activity and her termination. Her retaliation claim in Count III of the Complaint, therefore, fails and must be dismissed.

### E.  Counts IV & V: ADA Violations

Counts IV and V assert claims under Title I of the ADA for failure to accommodate and disability discrimination, respectively.

In Count IV of her Complaint, Plaintiff asserts that she was temporarily unable to get the vaccine because she had contracted COVID-19 and, on that basis, her doctor recommended she abstain from getting the vaccine for three months. Compl. ¶¶ 22, 76. Plaintiff contends that Defendant was required to provide "a reasonable accommodation to her medical disability exemption request from the COVID-19 vaccine mandate." *Id.* ¶ 77. In Count V, Plaintiff alleges that Defendant considered her "mere presence as an unvaccinated individual, regardless of testing, masking, or any other accommodation, posed an unmitigable risk" and considered her

---

[7] I recognize that the foregoing cases involved claims of retaliation under the ADA, not Title VII. This distinction is immaterial, however, because the same standards are typically applied to retaliation claims asserted under either statute. *See Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001) ("Because the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose—the prohibition of illegal discrimination in employment—courts have routinely used Title VII precedent in ADA cases."); *Parker v. Children's Nat'l Med. Ctr., Inc.*, Civ. No. ELH-20-3523, 2021 WL 5840949, at *23 (D. Md. Dec. 9, 2021) (citing *Laird v. Fairfax Cnty.*, 978 F.3d 887, 893 n.5 (4th Cir. 2020) ("Courts typically apply the standards for Title VII retaliation claims to ADA retaliation claims.").

"unvaccinated status to be a physiological condition related to her immune and respiratory system that impaired major life activities, such as interacting with others and working." *Id.* ¶ 87. According to Plaintiff, "Defendant therefore perceived [Plaintiff] as having a bona fide medical disability and discriminated against her by failing to explain why her unvaccinated status disability could not be accommodated, even though similarly situated persons had received accommodations from the COVD-19 vaccination requirement." *Id.* ¶ 89. Finally, in Count IX, Plaintiff alleges that APL retaliated against her or interfered with her rights, in violation of 29 CFR § 1630.12 *et seq.*, by "failing to provide reasonable accommodation related to her bona fide disabilities as it pertained to Defendant's COVID-19 vaccination requirement, failing to address the hostile work environment made known to Defendant through the ethics complaint process, obtaining medical information from [Plaintiff] under false pretenses, and terminating [Plaintiff]." *Id.* ¶ 116.

The ADA makes it unlawful for employers to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). "To establish a claim for disability discrimination under the ADA, a plaintiff must prove '(1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability.'" *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015) (quoting *EEOC v. Stowe–Pharr Mills, Inc.*, 216 F.3d 373, 377 (4th Cir. 2000)). Like violations of Title VII, "[d]isability discrimination may be proven through direct and indirect evidence or through the *McDonnell Douglas* burden-shifting framework." *Id.*

"In order to state a claim cognizable under the ADA, [Doe] must demonstrate she has a disability." *Cox v. Civista Med. Ctr.*, 16 F. App'x 185, 186 (4th Cir. 2001). The ADA defines "disability" as:

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(1). A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111. Ultimately, "[t]he determination of whether a person is disabled is an individualized inquiry, particular to the facts of each case." *EEOC v. Sara Lee Corp.*, 237 F.3d 349, 352 (4th Cir. 2001) (citations omitted).

Because the Complaint fails to allege facts to support Plaintiff's claim that she had a disability under the ADA's definition, her ADA claims must be dismissed.

First, Plaintiff does not allege that her COVID-19 infection in late December 2021 was so severe that it limited her ability to engage in major life activities. Major life activities include "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." 29 C.F.R. § 1630.2(i)(1)(i). The only limitation alleged in the Complaint associated with Plaintiff's COVID-19 diagnosis is, based on her physician's opinion at the time, that Plaintiff was temporarily unable to receive a vaccine. A doctor's advice not to receive a vaccine for a period of three months does not amount to a severe limitation on a major life activity such that it qualifies as a disability under the ADA.

Second, Plaintiff's claim that APL "regarded her" as having a disability is unavailing. For a plaintiff to plead they were "regarded as having a disability" within the meaning of the statute, he or she "must plausibly allege 'that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the

impairment limits or is perceived to limit a major life activity.'" *Jorgenson*, 2023 WL 1472022, at *4 (quoting 42 U.S.C. § 12102(3)(A), and citing *Miller v. Maryland Dep't of Nat. Res.*, 813 F. App'x 869, 876 (4th Cir. 2020)). Any claim that Plaintiff was subjected to a prohibited employment action "because of an actual or perceived physical or mental impairment" would not be plausible under the facts contained in the Complaint. The only reason for Plaintiff's termination supported by the facts alleged in the Complaint is her refusal of vaccination for COVID-19. The only factual basis for Plaintiff's bare allegation that APL "considered [Plaintiff's] unvaccinated status to be a physiological condition . . . that impaired major life activities, such as interacting with others and working[,]" is APL's refusal to allow Plaintiff to return to work until she was medically cleared. Compl. ¶¶ 18, 87. But Plaintiff does not allege any facts to suggest that her bout with COVID-19 was anything more than "transitory and minor," and "a plaintiff cannot ultimately succeed on a regarded as claim if the impairment is 'transitory and minor.'" *Miller*, 813 F. App'x at 876 (quoting 42 U.S.C. § 12102(3)(B)). Such impairments are expressly excluded from the ambit of a "regarded as" disability under the statutory definition. *See* 42 U.S.C. § 12102(3)(B).

Moreover, the Fourth Circuit has determined that, for purposes of the ADA, "an employer's inquiry into an employee's vaccination status isn't a disability-related inquiry." *Finn*, 160 F.4th at 99 (citing *Jorgenson.*, 2023 WL 1472022, at *5). Although Plaintiff concedes that courts have concluded that unvaccinated status may not be considered a prima facie disability, she argues that "if unvaccinated individuals or individuals whom are unvaccinated and recovered from COVID-19 are treated as if they were still infectious even though no longer infectious and prevented them from returning to work, then the employer has regarded the employee as having a disability[.]" ECF 17 at 18–19. But as several courts have explained, "vaccination status stems from a personal choice, not from a physical or mental impairment." *Foshee v. AstraZeneca Pharms. LP*, Civ. No.

SAG-23-00894, 2023 WL 6845425, at *5 (D. Md. Oct. 17, 2023) (citing *Speaks*, 2022 WL 3448649, at *5), and *Johnson v. Mount Sinai Hosp. Grp., Inc.*, No. 22-CV-02936, 2023 WL 2163774, at *6 (E.D.N.Y. Feb. 22, 2023), *aff'd,* No. 23-466, 2024 WL 3289475 (2d Cir. July 3, 2024)). *See also Finn*, 160 F.4th at 100 ("[Plaintiffs] allege that [Defendant] regarded them as disabled because they were unvaccinated and then fired them for that reason. But, once again, being unvaccinated isn't a physical or mental impairment. It therefore can't support a 'regarded as' claim."). And mandating that a plaintiff employee "to follow a COVID-19 policy applicable to all employees does not support the inference that [the employer] classified [her] as disabled under the ADA." *Foshee*, 2023 WL 6845425, at *6.

For all of the foregoing reasons, Counts IV and V fail to state plausible violations of Title I of the ADA and must be dismissed.[8]

### F.  Count IX: ADA Interference

In Count IX of the Complaint, Plaintiff asserts violations of the ADA's implementing regulations. Although Count IX is styled as "Retaliation and Interference" under 29 C.F.R. § 1630.12,[9] Plaintiff failed to respond in her opposition to Defendant's arguments as to why her retaliation claim fails. Plaintiff therefore is deemed to have abandoned that claim. *See Sewell v. Strayer Univ.*, Civ. No. DKC 12-2927, 2013 WL 6858867, at *2 (D. Md. Dec. 27, 2013) (citing *Ferdinand–Davenport v. Children's Guild,* 742 F. Supp. 2d 772, 777, 783 (D. Md. 2010)).[10]

---

[8] To the extent Plaintiff claims her "COVID-19 immunity as an unvaccinated person" was not accommodated, ECF 17 at 21, that claim is not stated in the Complaint and, to the contrary, it conflicts with the allegation in the Complaint that "Defendant considered [Plaintiff's] unvaccinated status to be a physiological condition related to her immune and respiratory system that impaired major life activities, Compl. ¶ 87. An immunity from a virus is not a disability under the ADA.

[9] The cited regulation, 29 C.F.R. § 1630.12, is part of the ADA's implementing regulations.

[10] Regardless, Plaintiff's ADA retaliation claim would still be deficient for the same reasons that her Title VII retaliation claim is deficient. *See Parker*, 2021 WL 5840949, at *23 (citing *Laird*, 978 F.3d at

Moreover, Plaintiff does not appear to allege any retaliatory conduct by Defendant in support of Count IX.

With respect to the interference claim, Plaintiff's argument in her opposition varies from the allegations in her Complaint. In her opposition, Plaintiff contends that she engaged in protected activity by seeking an accommodation and filing an ethics complaint. ECF 17 at 23. She further states in her opposition that APL interfered with her ability to redress its violation of the ADA and intimidated her from pursuing a charge of discrimination when it discussed her private medical information with her doctor. *Id.* But in the Complaint, Plaintiff does not allege unlawful interference based on contacts between APL and Plaintiff's medical provider. *See* Compl. ¶¶ 114–16. In any event, Plaintiff's new arguments miss the mark.

Under 29 C.F.R. § 1630.12(b), "[i]t is unlawful to coerce, intimidate, threaten, harass or interfere with any individual in the exercise or enjoyment of, or because that individual aided or encouraged any other individual in the exercise of, any right granted or protected by [the ADA's implementing regulations]." To plead a claim of ADA interference, a plaintiff must set forth sufficient facts to demonstrate that:

> (1) she engaged in activity statutorily protected by the ADA; (2) she was engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; (3) the defendants coerced, threatened, intimidated, or interfered on account of her protected activity; and (4) the defendants were motivated by an intent to discriminate.

*Kelly v. Town of Abingdon, Virginia*, No. 1:19CV00032, 2020 WL 2553614, at *7 (W.D. Va. May 20, 2020), *aff'd*, 90 F.4th 158 (4th Cir. 2024) (quoting *Frakes v. Peoria Sch. Dist. No. 150*, 872

893 n.5 ("Courts typically apply the standards for Title VII retaliation claims to ADA retaliation claims.")); *see also Jones v. HCA*, 16 F. Supp. 3d 622, 635 (E.D. Va. 2014) ("The elements of an ADA retaliation claim mirror the elements of Title VII retaliation claim."). Additionally, Plaintiff's Complaint fails to plausibly allege that she was protesting the application of APL's vaccine mandate to those with disabilities.

F.3d 545, 550–51 (7th Cir. 2017)); *see also Patel v. Credence Mgmt. Sols.*, No. 120CV00427RDAJFA, 2021 WL 1439675, at *10 (E.D. Va. Mar. 15, 2021), *aff'd sub nom. Patel v. Credence Mgmt. Sols. LLC*, No. 21-2324, 2023 WL 5348340 (4th Cir. Aug. 21, 2023) (citations omitted).

The Complaint does not include any facts to suggest that APL's communications with Plaintiff's doctor about her request for an accommodation to the vaccine requirement interfered with her ability to seek ADA redress or her exercise of her rights under the ADA, or that APL at any point was motivated by an intent to discriminate against her based on ADA protected activity. Moreover, as noted *supra*, the Fourth Circuit has held that "an employer's inquiry into an employee's vaccination status isn't a disability-related inquiry." *Finn*, 160 F.4th at 99.

In sum, Count IX is dismissed because it fails to state any plausible claim for relief.

## V.    PLAINTIFF'S MOTION FOR LEAVE TO AMEND

Following APL's motion to dismiss, Plaintiff filed a motion seeking leave to file an amended complaint. *See* ECF 18. Plaintiff's proposed amendment adds a small set of allegations in support of her Title VII claim in Count I of religious discrimination based on failure to accommodate and her ADA interference claim, now re-numbered Count VI, following removal of the state-law claims she voluntarily dismissed. *See* ECF 18-1 & 18-2. Because the proposed amended complaint, with its additional allegations, is not clearly insufficient to state a plausible Title VII discrimination claim in Count I, and the proposed amendment is not prejudicial nor presented in bad faith, Plaintiff's motion to amend is granted as to Count I. However, the ADA interference claim in the proposed amended complaint fares no better than that in the initial Complaint. Because the proposed amendment is futile as to the interference claim, the motion to amend is denied as to that count.

Amendment of pleadings is governed by Federal Rules of Civil Procedure 15. Rule 15(a)(2) provides that a court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Based on this rule, the Fourth Circuit has endorsed a liberal approach to granting motions for leave to amend. The court has "interpreted Rule 15(a) to provide that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (citation and internal quotation marks omitted). Leave to amend should be denied as futile "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986) (citations omitted).

Here, Plaintiff seeks to amend her Complaint to include modest additions pertaining to religious discrimination under Title VII (Count I) and interference under the ADA's implementing regulations (Count VI). With respect to Count I, Plaintiff adds the following to her Complaint:

> Doe's religious faith is a sincere Catholic Christian and her reasons for her faith and practice needing the exemption were stated and declared to Defendant, in part, as follows:
>
> I am a devout Catholic Christian with the sincerely held belief that receiving the COVID19 vaccine would be completely against my faith, morals, and conscience. The main belief that necessitates my accommodation is the belief that all lives are sacred gifts and it is immoral, evil, and wrong to end a life. The 5th commandment states that it would be a moral sin to kill. I firmly believe that every human life begins at the time of conception and must be respected and safeguarded. Furthermore, God created us in his image and loves us so much that he sacrificed his only son for us to be forgiven of our sins and as a result, we are called to follow the Lord's word and act through his image. "If anyone destroys God's temple, God will destroy him. For God's temple is holy, and you are that temple" (1 Corinthians 3:17).
>
> Doe's complete religious exemption declaration is attached hereto as Exhibit One.

31

*See* ECF 18-2 at 3 (red-lined proposed amended complaint).

Notably, Doe's completed religious exemption declaration is not attached as an exhibit to the proposed amended complaint, but it is attached to Plaintiff's opposition to Defendant's motion to dismiss. *See* ECF 17-1. In the Declaration, Plaintiff explains that:

> The science associated with the COVID-19 vaccinations as well as the COVID-19 vaccination program both directly conflict with my religious beliefs stated above (see response to question #2) as they were produced from the cells of electively aborted human babies. Early in the development of mRNA vaccine technology (e.g., Pfizer and Moderna), fetal cells were used for "proof of concept" (to demonstrate how a cell could take up mRNA and produce the SARS-CoV2 spike protein) or the characterize the SARS-CoV-2 spike protein. The non-replicating viral vector vaccine produced by Johnson & Johnson required the use of fetal cell cultures, specifically PER.C6, in order to produce and manufacture the vaccine.

> The COVID-19 vaccines would alter my God given body in a way that to me equals a violation of the first commandment because the mRNA development attacks the natural design of cell immunity by trying to supplant it. I would then be placing the worship of science above Gods creation. I strongly believe that consuming the vaccine, a prohibited "unclean food" would cause harm to my conscience because to me, the COVID-19 vaccines are unclean. I believe that there is also insufficient data to confirm that the vaccine will not cause my body excessive harm.

*See id.* at 3.

Defendant opposes Plaintiff's proposed additions as futile, relying on *Finn v. Humane Soc'y of U.S.*, Civ. No. 23-2107, 2024 WL 1765702, at *5 (D. Md. Apr. 24, 2024), for the proposition that there is a distinction between a religious opposition to abortion and an opposition to vaccines that were potentially developed using a fetal cell line. *See* ECF 20 at 11. The problem for Defendant is that the district court's decision in *Finn* was overturned by the Fourth Circuit. *See Finn v. Humane Soc'y of the U.S.*, 160 F.4th 92 (4th Cir. 2025). One of the plaintiffs in *Finn* objected to COVID-19 vaccination because aborted fetal cell lines were used to produce the

32

vaccine. *Id.* at 98. The plaintiffs based their objections to vaccination on the "Christian upbringing" and conviction that taking the vaccine would "betray … conscience and faith," citing Catholic teachings. *Id.* at 96–97. The employer denied the plaintiffs' requests for exemption and fired them. *Id.* at 97. The Fourth Circuit held that the plaintiffs' allegations were sufficient to state a plausible religious discrimination claim at the pleading stage, as the plaintiffs pleaded sincere religious beliefs that conflicted with their employer's vaccine mandate. *Id.* at 98–99.

For the same reasons, here, Plaintiff's proposed amended complaint is not clearly insufficient to state a claim in Count I for religion-based discrimination under Title VII. Thus, leave is granted to proceed with Count I of the proposed amended complaint.

Next, with respect to claim Count IX, Plaintiff adds the following:

> Defendant engaged in a pattern and practice of coercion, intimidation, interference and contact with her medical doctor in order to cause her to cease exercising her medical ADA rights and to be intimidated from pursuing her ethics complaint about Defendant's denial of the same.

> Defendant spoke with Plaintiff's personal doctor for the purpose of discussing Plaintiff's private medical information, interfering with her ability to seek redress for their violation of the ADA and intimidating her from pursuing her charges of discrimination.

*See* ECF 18-2 at 20.

Defendant argues that leave to amend should be denied because Plaintiff still fails to plead that APL was motivated by an intent to discriminate and that APL coerced, threatened, intimidated or interfered with her request for accommodation because she engaged in a protected activity. *See* ECF 20 at 9. The Court agrees.

Plaintiff's proposed additional allegations are conclusory statements that do not address the pleading deficiencies in Count IX identified in Part IV.F *supra*. Specifically, Plaintiff does not allege facts to support her conclusion that APL engaged in the alleged pattern and practice, nor

33

does she state any facts to suggest that APL had discriminatory motivations. *See Kelly*, 2020 WL 2553614, at \*7 (interference claim requires that "the defendants were motivated by an intent to discriminate"). It is unclear how Plaintiff's ethics complaint relates to the alleged interference. *See id.* (interference claim requires that "the defendants coerced, threatened, intimidated, or interfered on account of her protected activity"). Plaintiff filed her ethics complaint on January 7, 2022, while seeking a religious accommodation, which occurred before her doctor sent in the alleged medical accommodation request on January 10. And it is similarly unclear how APL speaking to Plaintiff's doctor about her request for accommodation interfered with her ability to seek redress of APL's alleged ADA violation or impeded her ability to pursue charges of discrimination. In the end, these proposed additions are the type of "[t]hreadbare recitals of the elements" that cannot survive a motion to dismiss. *See Iqbal*, 556 U.S. 662, 678, (2009). Therefore, the Court finds them to be futile. The proposed amendment of Count IX is denied.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Proceed Pseudonymously (ECF 2) is denied; Defendant's Motion to Dismiss (ECF 11) is granted; and Plaintiff's Motion for Leave to Amend (ECF 18) is granted as to Count I but denied as to Count IX. Plaintiff shall re-file a version of her Amended Complaint that includes her name and excludes the counts subject to dismissal and/or found to be futile (Counts II through VI).[11]

A separate Order will follow.

 3/30/26                                                        /S/
Date                                                     Matthew J. Maddox
                                                         United States District Judge

---

[11] The proposed Amended Complaint does not modify or augment the allegations offered in support of Counts II through V, so these counts are subject to dismissal and futile for the reasons explained in Parts IV.C, IV.D, and IV.E *supra* and are therefore futile.